IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRAVIS N. POYNER,<br><br>        Plaintiff,<br><br>vs.<br><br>NEW ALBERTSONS, INC., et al.,<br><br>        Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:08 CV 1007 (TC) |

In this action filed pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, Travis Poyner asks the court to determine whether Standard Insurance Company ("Standard") correctly calculated the amount of monthly disability benefits that he is owed pursuant to the terms of New Albertsons, Inc's ("Albertsons") long-term disability plan. Mr. Poyner, who worked for Albertsons as a truck driver, argues that Standard erred when it awarded him compensation based only on his hourly rate of compensation and excluded such compensation as his mileage. Because the language of the plan is unambiguous and excludes such extra forms of compensation as mileage, Standard's motion to dismiss is granted.[1]

---

[1] A court generally may consider only those facts presented in the complaint when deciding a motion pursuant to Rule 12(b)(6). E.g., County of Sante Fe, N.M. v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1035 (10th Cir. 2002). Case law recognizes an exception to this rule, however, which allows a court to expand its review and to consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002);

**BACKGROUND**

Before becoming disabled in 2007, Mr. Poyner worked for Albertsons as a truck driver. He was paid each month based on hourly earnings and based on the mileage he drove. Specifically, when he worked within a 100- mile radius of the home distribution center, he was paid based on an hourly rate. And when he worked outside of that radius, he was paid a rate based on his mileage. Mr. Poyner received other compensation, including pay for night premiums and pay for stops, layovers, and delays.

After becoming disabled, Mr. Poyner applied for benefits under Albertsons' long-term disability plan, which the parties agree is governed by the terms of ERISA. If employees of Albertsons are still unable to work after they have exhausted available short-term disability benefits, they may receive long-term disability benefits under the plan until they reach the age of 65. Such benefits amount to 60 percent of an employee's so-called predisability earnings, which refers to an employee's monthly rate of eligible earnings. The plan generally specifies what is and what is not included in that figure.

In this case, Standard, the claims administrator and insurer for the plan, approved Mr. Poyner's application for long-term benefits. But when calculating the precise amount of benefits owed, Standard considered only his hourly wage and omitted from its calculation any compensation he received for his mileage. More specifically, Standard concluded that based on his hourly wage of $16.70, Mr. Poyner's predisability earnings totaled $2,903.11 a month.

---

see GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).
   In considering Standard's motion to dismiss, the court looks to the facts alleged in the complaint and the language of the long-term disability plan, which Standard submitted with its motion. The court will consider the plan language without converting the motion to one for summary judgment because Mr. Poyner's complaint references the plan, the parties do not dispute that the plan document submitted is authentic, and the plan's language is at the core of the dispute between the parties.

Consequently, Standard concluded that he was owed $1,741.87 in long-term disability benefits. Standard did not consider any other form of reimbursement and began paying Mr. Poyner in March 2008.

Mr. Poyner filed this suit asking the court for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and for declaratory and injunctive relief.[2] In his complaint, Mr. Poyner contends that Standard, which retained authority to control and manage the plan, erroneously excluded mileage compensation from his long-term disability benefit calculation. He further argues that Standard should have recognized that his predisability earnings—based on compensation from his hourly rate and his mileage—amounted to $3,867, which would entitle him to $2,320 a month in long-term disability benefits.

Standard filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] The parties do not dispute for purposes of this motion that Mr. Poyner exhausted all of his prelitigation obligations.

---

[2] Although Mr. Poyner represents in his complaint that this is a class action, the court has never certified this case pursuant to Rule 23 of the Federal Rules of Civil Procedure.

[3] Mr. Poyner asked the court, at the very least, to consider Standard's motion premature and to allow discovery. Mr. Poyner argued that discovery could reveal employment contracts, collective bargaining agreements, or other documents, which could provide insight as to Mr. Poyner's relationship with Albertsons and Standard.

The court invited Mr. Poyner to review the complete claim file in this case and to submit a supplemental response. (Min. Entry, Docket No. 48.) Mr. Poyner did so, and Standard replied. (Suppl. Brs., Docket Nos. 54, 57.)

In support of his claim that Standard had incorrectly calculated the amount of benefits owed, Mr. Poyner presented four types of documents: a memo from an employee at Standard explaining the calculation of benefits for Mr. Poyner, a spreadsheet with various earnings codes used by Albertsons, Mr. Poyner's Albertsons paystubs, and a bargaining agreement between Albertsons and a union of which Mr. Poyner was not a member. (See Pl.'s Suppl. Br., Docket No. 54.) The court did not find Mr. Poyner's supplemental briefing to be helpful and does not consider the documents that he identified in deciding Standard's motion.

## ANALYSIS

Standard of Review

A court will dismiss a complaint when it fails to present a claim to relief that is plausible on its face. The plaintiff's allegations "must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008).

But before evaluating the plausibility of Mr. Poyner's claims, the court must determine the appropriate standard to use in reviewing Standard's decision to deny Mr. Poyner benefits based on his mileage reimbursement. See Weber v. G.E. Group Life Assur. Co, 541 F.3d 1002, 1010-12 (10th Cir. 2008); Adamson v. Unum Life Ins. Co., 455 F.3d 1209, 1213 (10th Cir. 2006). When, as in this case, an ERISA provider explicitly retains the authority to interpret the terms of and to determine the grant of benefits under a plan, use of a "deferential standard of review" is appropriate. Weber, 541 F.3d at 1010 (quotation omitted). The court should only ask whether the denial of benefits was arbitrary and capricious and uphold the decision as long as it is "predicated on a reasoned basis." Adamson, 255 F.3d at 1212. But if a conflict of interest exists such that insurer doubles as the claims administrator, as in this case, the court should "dial back" this deference, and use a so-called sliding scale approach. Weber, 541 F.3d at 1010. Although the arbitrary and capricious standard still applies, a court must "decrease the level of deference given . . . in proportion to the seriousness of the conflict." Id. (quotation omitted); see also Adamson, 455 F.3d at 1213 ("Whatever the merits concerning the potential motivation of an insurer doubling as a plan administrator, such observations were never meant to be an ipso facto conclusive presumption to be applied without regard to the facts of the case-including the solvency of the insurer or the nature or size of the claim.").

Here, however, even if the court gave no deference whatsoever to the conclusion of the plan administrator, the result would be the same. Based on the plain, unambiguous language of the relevant portions of the plan, the court concludes that Standard's decision was correct.

<u>The Language of the Plan</u>

Standard relied on the section of the long-term disability plan entitled "Predisability Earnings" when it decided to grant Mr. Poyner benefits based on his hourly rate of earnings but not on his mileage compensation. This section reads:

> Your predisability earnings will be based on your earnings in effect on your last full day of Active Work. Any subsequent change in your earnings after that last full day of Active Work will not affect your Predisability Earnings.
>
> Predisability earnings means your monthly rate of earnings from your Employer, including:
> 1. Contributions you make through a salary reduction agreement with your Employer to:
>    a. An Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), 408(p) or 457 deferred compensation arrangement:
>    b. An executive nonqualified deferred compensation arrangement.
> 2. Shift differential pay.
> 3. Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.
>
> Predisability Earnings does not include:
> 1. Bonuses.
> 2. Commissions.
> 3. Overtime pay.
> 4. Your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.
> 5. Any other extra compensation.
>
> If you are paid on an annual contract basis, your monthly rate of earnings is one-twelfth (1/12th) of your annual contract salary.
>
> If you are paid hourly, your monthly rate of earnings is based on you're your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month. If you do not have regular work hours, your monthly rate of earnings is based on the average number of hours you worked per month during th proceeding 12 calendar months (or during your period of employment if less than 12 months).

standard

(Ex. 1, 23-24, Def.'s Mem. Supp. Mot. Dismiss, Docket No. 19.)

As Standard explains, the policy recognizes only two types of workers: those paid on an "annual contract basis" and those "paid hourly." (Id., 24.) Because there is no dispute that Mr. Poyner was not paid on an annual contract basis, he is an hourly employee for purposes of the plan. Standard further argues that the plan recognizes two types of hourly employees—those with regular hours and those without regular hours—and prescribes a method to calculate the benefits of each. Mr. Poyner was an hourly employee with regular hours, and consequently, Standard calculated his predisability earnings by multiplying his hourly pay rate by the number of hours he was regularly scheduled to work each month. According to Standard, what Mr. Poyner is asking for falls under "any other extra compensation" and is clearly excluded from the definition of "Predisability Earnings."

Mr. Poyner presents several arguments in support of his claim that Standard was wrong in excluding his mileage reimbursement from its long-term benefits calculation. First, he contends that, in his case, mileage reimbursement cannot be considered extra as it was the only pay he received on certain days. Second, he argues that Standard's interpretation contravenes the plain language of the plan, which guarantees that predisability earnings will be based on "earnings in effect on [an employee's] last full day of Active Work." Mr. Poyner argues that these earnings included compensation based on an hourly rate and on mileage. Finally, he notes that the plan "simply fails to address [Mr. Poyner's] hybrid arrangement and Standard cannot reduce [his] disability benefit based on . . . terms that do not exist." (Pl.'s Mem. Opp'n, 2, Docket No. 24.)

"Questions involving the scope of benefits provided by a plan to its participants must be answered initially by the plan documents, applying the principles of contract interpretation."

Chiles v. Ceridian Corp., 95 F.3d 1505, 1515 (10th Cir. 1996); see also Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000) (recognizing the validity of the court's use of "standard tenets of contract construction").  Courts must look to the plan documents as a whole and provide the words with "their common and ordinary meaning, as a reasonable person in the position of the plan participant (not the actual participant) would have understood them." Pirkheim, 229 F.3d 1008, 1010 n.2 (10th Cir. 2000).

      Considering the unambiguous nature of the plan, under even the most exacting standard of review, Mr. Poyner's claims are without merit.  As Mr. Poyner correctly suggests, the Predisability Earnings section begins by explaining to employees that their predisability earnings "will be based on your earnings in effect on your last full day of Active Work."  But this language cannot be viewed in isolation.  The section continues to clarify what that sentence means.  Long-term disability benefits are not based on all of the forms of compensation that an employee receives.  The Predisability Earnings section identifies which forms of compensation qualify and which do not.  Relevant to the dispute here, the amount of money that an employee receives from bonuses, commissions, overtime pay, employer's contributions to deferred compensation plans, and "any other extra compensation" are specifically excluded from any long-term disability benefit calculation.  And while the policy does not specifically mention mileage reimbursement, the phrase "any other extra compensation," when given its common and ordinary meaning as a reasonable plan participant would have understood it, includes this form of compensation.

      The structure of the plan—which recognizes only two classes of employees, those who are paid on an annual contract basis and those who are paid hourly—further supports the conclusion that Standard correctly calculated the amount of benefits that Mr. Poyner's was owed.

For each class of employee, the plan specifically explains how Standard will calculate the amount of predisability earnings. For an hourly employee like Mr. Poyner, for example, predisability earnings are calculated based on "[the] hourly pay rate multiplied by the number of hours [the employee is] regularly scheduled to work each month." (Id.) The plan is specific and provides for no other arrangement, including the hybrid option Mr. Poyner encourages the court to create. And none of the predisability earnings calculations provided for in the plan allocate for extra compensation.

In urging the court to arrive at a different conclusion, Mr. Poyner points to Wegner v. Standard Insurance Co., 129 F.3d 814 (5th Cir. 1997), which also involved a long-term disability policy administered by Standard. But the case is inapposite. Mr. Wegner had been employed as an hourly employee before he took a temporary assignment through which he was paid a $300 per day salary. Mr. Wegner became injured while on the temporary assignment, but Standard used his hourly rate to determine the amount of benefits he was owed. In concluding that Standard had erred, the Fifth Circuit Court of Appeals noted that "relevant employment documents [had] expressly changed [Mr. Wegner's] status from an hourly employee to a salaried one." Id. at 819. Such is not the case here. There is no dispute that Mr. Poyner was an hourly employee. He simply seeks to have the court rewrite the plain language of the policy.

Because the court concludes that Mr. Poyner does not present a plausible claim for relief, Standard's motion to dismiss is granted.

>

>

>

>

## ORDER

For the reasons set forth, Defendant Standard Insurance Company's Motion to Dismiss (Docket No. 18.) is GRANTED.

DATED this 17th day of September 2009.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
Chief Judge